Okay, 14-2008 Zoretic v. Darge Good morning. John O'Brien Good morning. May it please the Court, my name is John O'Brien and I represent the plaintiff appellant in this case, Marilyn Zoretic. This case is on appeal from the lower court's ruling in favor of the defendant of Hallease. Three motions for summary judgment. The claims at issue here are Ms. Zoretic's Fourth Amendment excessive force and unlawful search and seizure claims against the defendant, sheriff's deputies, and her state law claims of intentional infliction of emotional distress against the condominium association and their property managers. Also at issue are the sheriff's deputies' defenses of quasi-judicial and qualified immunity. Marilyn Zoretic But if we accept the defendant's factual version of the events in total, as Judge Gettleman did, is there anything in dispute other than the legal validity of the order? John O'Brien Well, part of the issue here is that it was error for the defendant's version of events to be taken without consideration of the plaintiff's Zoretic's contradictory facts. Marilyn Zoretic Well, let me ask you, is there any evidence in the record to dispute the fact that Officer Dyson called Lieutenant Pond to confirm the order was valid when Zoretic informed them she had spoken to Lieutenants DeCaro and Pond? John O'Brien Ms. Zoretic did not specifically address that in her response. Marilyn Zoretic So there is no evidence to dispute that fact? John O'Brien I believe it is included in her deposition testimony that she disputed that they had that discussion during the eviction. However, that was not specifically raised in the response brief. Marilyn Zoretic And what, if any, argument has she preserved is to the validity of the eviction order. We know she didn't raise the 120-day limit below. So what was her basis for saying that the eviction order was invalid? John O'Brien Well, for a number of reasons. One, she states directly that it was used for two different evictions. And although she did not raise the 120 days directly, she did attach the orders themselves. And it is clear from the orders that it was only entered in September of 2008. After that point, it was never entered again.  Marilyn Zoretic But she failed to give the district court any specifics, you know, that would support it. John O'Brien Well, the record does support her allegations. And although they are not as... Marilyn Zoretic Well, there was this generic challenge to the validity of the order, but that doesn't work, does it? John O'Brien It does when it's supported by the documents that were attached. And it's even anticipated in the appellee's summary judgment briefs themselves to a certain extent where in the affidavits of the sheriff's deputies, they state that ex part means no expiration. It's almost as if they're anticipating this being an issue, the facial validity in the 120-day expiration. That obviously was not true. Marilyn Zoretic Look, if anyone can be faulted with that regard, and I certainly am not saying anyone can be, it would be the Condominium Association's law firm, which initiated the second eviction. It certainly, you know, wouldn't be these officers who, you know, it wouldn't be clear to them that the order, which had been recertified in April, was necessarily invalid. John O'Brien It should have been clear to them because it was over 120 days past the date when it was entered. But as far as the... Marilyn Zoretic You know, that argument wasn't even raised below. John O'Brien It was not raised, that was not raised specifically by plaintiffs. Marilyn Zoretic Right, so it's waived. John O'Brien She did indicate that she did speak with the Chief DeCaro of the Sheriff's Office several times between the January eviction and the June eviction. And the sheriffs were put on notice that there was a problem with this eviction order, this order of possession. That's, at the very least, a question of fact, whether or not they were put on notice that there was a problem with its validity. And she pointed this out during the eviction. As far as the Condominium Association's role and their property managers, although they had retained counsel to proceed with the eviction, they were the ones that told their attorneys to initiate it. It's very clear in the emails from Michael Bloom that he told the lawyers to proceed ASAP. And it's a question of fact whether or not he believed that this was an improper procedure because he raised that question himself. Now, also going to the facial validity, despite the problem with the dates and the fact that the trial court in the state court gave Ms. Zaretic possession back on her motion on June 15, 2009, the court ruled that the eviction was unlawful. It gave her possession back. And so the appellees should be stopped from raising any sort of argument that the eviction itself was proper. Going to their qualified immunity defense, there's a two-prong analysis here, which can be viewed in either sequence, but essentially it comes down to whether their conduct violated a constitutional right and whether that right was clearly established at the time of the violation. Here, obviously, the Fourth Amendment claims that Ms. Zaretic is raising were established at the time the sheriff's deputies were on notice of them. And as far as whether their conduct violated the constitutional right, the defendants rest their justification for their manner of entry solely on their claims that when they, well, with regard to the excessive force claim, with respect to the manner of entry in that the defendants claim that the door was unlocked, that they knocked and announced, and that when no one answered, they entered with their guns drawn. This is directly contradicted by Ms. Zaretic's testimony in which she states that the door was locked, she never heard any knocking, and that the sheriff's just burst down in the door. With respect to the emotional distress claim against the Condominium Association and its agent, how do the conceded facts show that she suffered severe emotional distress, for example? There are a number of facts going toward that, some provided by her husband, Anton Zaretic, in his deposition, in which he states that during the eviction she was crying hysterically, that they suffered from losing their family's belongings. All of this happened on the day of their son's eighth-grade graduation, and Mr. Zaretic stated in his deposition that it took an emotional toll on his wife and that as a result she would experience chest pains and panic attack-like symptoms. These are all stated in Mr. Zaretic's deposition. Did she get any medical care? She did not, but although that's a factor to consider, it's not required for IIED that she do. But there is a question of fact with what is in the record as to whether she suffered emotional damages, and she states in her response brief that the day was one to remember, but for all of the wrong reasons. It perhaps requires some reading into, but it's pretty clear from that that they went through the trauma of her son's eighth-grade graduation, and now every time that they remember it, it brings back the trauma of this unlawful eviction. And I just want to make sure I just have the times right. Had she gone through eviction proceedings seven times before? It was approximately six or seven. However, those cases are distinguishable in a number of ways. One, just being part of an eviction lawsuit is different from actually being physically evicted, and also it's distinguishable when an eviction is lawfully instituted as opposed to when it's an unlawful eviction. During your rebuttal, you want to save some time, I think. Thank you. Thank you. Okay. Mr. Bonner, are you going to be first? May it please the Court. Good morning, Your Honors. As this Court has pointed out, that the officers would have no knowledge that the order was not facially valid. So the officers would have no knowledge that the order was not valid. The officers executed a facially valid order. The officers did not make any verbal threats or shocking behavior. The female officer escorted plaintiffs to the living room, and another officer conducted the protective suite. Therefore, the officers are entitled to quasi-judicial immunity and qualified immunity. The officers are entitled to quasi-judicial immunity because the clerk's office stamped the order with a date of February 29, 2009. The clerk would not have stamped the order unless the judge ordered it to, and the officers followed the right procedures after receiving that order. Plaintiffs have provided no evidence to support the assertion that the officers knew that they did not possess a lawful order. Deputies are not judges. They must have confidence in their orders, and they must act accordingly to the orders that the judge has issued. We do not want police officers acting as many appellate courts. The sheriff's office, as this court has pointed out, did nothing wrong. As you understand it, what effect does recertifying the order have here? As far as the officers are concerned, it was like issuing a new order. As far as the Cook County clerk's office, it goes, it's not all the time does a judge sign the order. Sometimes it's stamped by the clerk's office with the judge's seal on it. Sometimes it's just stamped with the clerk's office seal on it. So when the officers get a bundle like that from the clerk's office with a stamped seal, it's an indication to them that it's gone through the proper procedures and channels. Is it typical for the eviction unit to enforce orders that have two different date stamps on them? How often does that happen? I'm not sure how often it happens, Your Honor, but it probably happens very frequently, depending on if the judge is not present, the judge that initially signed that order, and there's another judge standing in the stead of that judge, and therefore doesn't sign it and just has the clerk's office stamp it. So the officers looking at the new stamp would go with the new date by the clerk's office. So it does happen? It does happen. So the officers, too, Your Honor, are entitled to qualified... And does it happen when it's been an expiration? As far as the 120 days? Again, that wasn't brought up as far as the lower court and the district court, but as far as the expiration, the officers would have no knowledge of that law. They're not lawyers, and so their understanding of it would have been that it went through the proper procedures. And so they just go with the most recent stamp? Yes. Yes, Your Honor. So the officers are entitled to qualified immunity because the officers acted within a reasonable manner. They had officially vowed order. They knocked on the door. They announced their presence. There is no evidence in the record to show that they did not announce their presence. It's only in the record as far as the evidence that the plaintiff did not hear them announce their presence. They have with them a representative from the Condo Association. They also have with them probably some movers to help move out. They have other civilians that may be present there. And so the officers drew their weapons because there was no response. The door was unlocked, and they don't know who's behind the door. And as the evidence in the record shows, this is a proper procedure. When no one has responded, they have to evict the family out or whoever else is in there. And so they drew their weapons. Once they saw that the plaintiff and her husband were unarmed and were not dangerous, they then escorted her out to the living room and did a protective sweep. They took pictures of all the personal property and items in the apartment. After that, Ms. Zaretik, the plaintiff here, informed them that she didn't think this was a valid order. So they contacted their lieutenant, which the lieutenant told them that we had nothing in our record to show that it wasn't valid. So the lieutenant told them to continue. Additionally, there's no excessive force here. It's admitted by Ms. Zaretik that the officers did not touch her. They did not search her. They did not search her person. They had no physical contact with her whatsoever. So there is no excessive force in this issue. Finally, Your Honor, the plaintiff did not follow the local rules of 56.1b, which requires the plaintiff to strictly comply with this rule, and she did not strictly comply with the rule. She did not provide evidence or citations to her legal conclusions that were in her statement of facts to support her allegations that the officers had any knowledge of this invalid order or that the officers did anything wrong as far as not knowing that the door was unlocked or if the door was locked. Therefore, we ask that this court, if there's no other questions to be asked, uphold this order from the district judge. Thank you very much. Thank you. Mr. Stamatis? Good morning. Good morning. May it please the Court, Your Honors, Counsel, my name is Peter Stamatis, and I represent two of the defendants in the case, the Condo Association, Castilian, and its property manager, First Merit. Below, before Judge Gettleman, there were only two counts raised in the complaint against First Merit and Castilian. And each was for, in two separate counts, the tort of the intentional infliction of emotional distress. Judge Gettleman, in our view, was correct and should be affirmed when he ruled that the plaintiff had presented no evidence whatsoever of any of the elements of an IIED claim against either defendant. First, there was no evidence of any outrageous conduct. Outrageous conduct, as the Court is aware, requires conduct on the part of the perpetrator that is so extreme, beyond all possible bounds of human decency, conduct that's intolerable in a civil society, that the average member of the community, upon seeing it, would scream outrageous. In the instant case, First Merit had been the property manager of this property for a mere 11 days prior to sending the matter in its entirety to the condo association's lawyers. That document is set forth and is in the record at our page ID 752. Counsel for the plaintiff referred to it tangentially in his argument when he articulated that Mr. Bloom asked the sheriff or asked their former law firm, the condo law firm, to execute the eviction of the tenant ASAP. But what wasn't read from that email was the second half of the email, where Mr. Bloom seeks legal advice from the condo law firm, and he says, I don't know if this matters, but the sheriff attempted to evict Ms. Zaretik on January 6th, but for some reason the prior management company let her stay without getting her to sign a lease. Please let me know if a new eviction order can be placed with the sheriff immediately. We don't see. Well, so in other words, she wasn't. I thought she was offered another lease following the January eviction. She had been, Your Honor. Yeah. What, if anything, do the admitted facts tell us about that lease? Ms. Zaretik had been evicted, immediately regained possession of the property upon her promise that she would sign a new lease. She was tended a new lease by the prior management company, not by First Merit, and they indeed offered her a lease that was $300 less than what she had been previously paying. She had agreed to sign the lease, but then ultimately when the lease came, there was never a lease executed. Right. Mr. Bloom from First Merit had tried on a number of occasions to present her with the lease, knocks on the door, the door was never open. Well, she alleged that that lease was invalid or incomplete or inaccurate or something. Two things in that regard, if I may, Your Honor. Yeah. First of all, that argument was never raised before. Second of all, there's no evidence in the record that she ever responded to Mr. Bloom. She ever said, Mr. Bloom, the lease that I've been tendered has the wrong number of individuals. I have a family, I believe her family is a five, the lease was a four. Had that been for five, it would have been changed to five. It was in the First Merit's interest to have this problem solved, have the matter put to bed. There's no outrageous conduct, and similarly, Your Honors, there is no evidence that support any of the other elements of the IAED claim, whether an intent to harm her, nor that she was indeed damaged to the extent that's compensable under an intentional infliction of emotional distress claim, and so we therefore ask that Judge Gettleman's granting of summary judgment be affirmed. Thank you very much. Thank you. Thank you. Okay. Mr. O'Brien. How much time? Five minutes. Five minutes. To respond first to some of the issues raised by the Counsel for the Defendant, Sheriff's Deputies, first of all, regarding the qualified immunity defense, there are questions as to the knowledge of the Sheriff's Office's validity of the order given that Ms. Zaretic called into the Sheriff's Office several times. There is also an issue as to whether or not the Sheriff's Office is required to check the validity of the order of possession, and the defendants include in their own exhibits with their Lieutenant Pahn from the Sheriff's Office and his affidavit, paragraph seven, says that the supervisors are required to check the validity of the order. So that raises a question why this order in particular wasn't caught when it was past expiration and when Ms. Zaretic had called the Sheriff's Office to state, you know, that this order was being reused after already being used in a different eviction. Regarding the certification stamp, it's not the same thing as when a judge stamps an order and enters it. When a clerk certifies an order, it's not the judge entering anything. It's basically someone handing the clerk an order and the clerk saying, yes, this is an order and stamping it. It's a much different thing. And then regarding the qualified immunity defense, there are questions of fact, and these are in the record in the deposition transcripts that the defendants included themselves. So as far as the manner of entry and as far as the scope and duration of the search once the officers were in the unit, these are all questions of fact that are preserved in the record. You are her third attorney. Is that correct? Yes, Your Honor, to my knowledge. Although I would note that it's my understanding that her second attorney was appointed for the purposes of a settlement conference. With respect to the condominium association and their property managers, there are questions of fact regarding the issue of the lease. And Ms. Zaretic does raise in her response brief that she had problems with it, one of which being that it had the wrong number of occupants listed. There's also a question of fact regarding the communications and negotiations of that lease. Ms. Zaretic, in her supplemental interrogatory response, which the defendants had included as an exhibit to their summary judgment brief, did indicate that she was willing to pay the association on a month-to-month basis. Interestingly, in the affidavit of Barbara Austin, who was one of the board members of Castilian Court and which the defendants included as an exhibit to their summary judgment motion, she mentions that the lease they were tendering was a month-to-month lease. So there are a number of questions of fact regarding that issue and those communications. With respect to Ms. Zaretic's emotional distress and even with respect to her susceptibility to stress and the defendant's knowledge of it, there's also a question of fact there, as she stated during her communications regarding the lease, how she was under stress. And so there's a question of fact in her deposition transcript as to the defendant's knowledge of her susceptibility and the fact that she was under stress. And that their threats of evicting her were causing that. So to conclude, I would just restate that the order of possession was facially invalid and the sheriff's deputies were required to check that validity. And Ms. Zaretic, for her part, had given them notice that there was a problem with validity. As far as the qualified immunity defense, there are numerous issues of fact that render summary judgment inappropriate there. And finally, regarding the IAED count against the condo and property managers, there are issues of fact regarding the communications between Ms. Zaretic and Mr. Bloom, which a fact finder could find that Mr. Bloom's conduct and that of the association was outrageous and caused emotional distress. Thank you. Thank you, Mr. O'Brien, and thanks to Mr. Bonner and Mr. Stamatos. And the case will be taken under advisement. And we're going to take a five-minute break. Don't you think we need it?